UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EARTHWISE TECHNOLOGIES, INC.;
and EARTHWISE ELECTRONICS, INC.,

    Plaintiffs,

v.

COMFORT LIVING, LLC,

    Defendant.

Case No. C09-5266BHS

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION

This matter comes before the Court on Plaintiffs' motion for preliminary injunction. Dkt. 5. The Court has considered the pleadings filed in support of and in opposition to the motion, the parties' arguments made at the preliminary injunction hearing held July 30, 2009, and the remainder of the record, and grants in part and denies in part the motion for the reasons stated herein.

## I. FACTUAL BACKGROUND

This matter involves a contract dispute between Plaintiffs Earthwise Technologies and Earthwise Electronics and Defendant Comfort Living. The parties dispute many of the facts; the Court summarizes each party's version of the facts here.

Bruce Searle is the sole principal of two entities: Earthwise Technologies and Earthwise Electronics, both based in Yelm, Washington. The role of each of the Earthwise entities as it relates to this motion is a source of confusion to the Court, and, apparently, to

ORDER – 1

the parties as well. The Court will refer to Plaintiffs as "Earthwise" when the facts are unclear as to which Earthwise entity is involved.

Earthwise maintains that it developed an infrared portable heater (hereafter "the heater") in 2006, which it retails over the internet, and wholesales through a network of distributors around the country. The heater is manufactured by Well Electronics Company, Ltd. ("Well"), a Taiwanese company.

The parties dispute whether Mr. Searle and/or Earthwise have or had any patent rights to the heater. According to documents filed by Plaintiffs, Mr. Searle filed a "PCT (Patent Cooperation Treaty) application" at some point in 2008. Dkt. 20 (Exhibit A). Mr. Searle claims that he has an "interest in the patent" for the heater. *Id.* at 2 (Declaration of Bruce Searle). At the July 30, 2009, hearing, Plaintiffs' counsel stated that Earthwise and Well have joint and several ownership of the patents related to the heater. At the hearing, Defendant's counsel argued that a PCT is not a patent or patent application. Defendant's counsel also stated that there is no patent pending in the United States for Well's heater, and that there is no joint ownership of any patent with Mr. Searle or Earthwise. Another issue in contention is whether Mr. Searle and/or Earthwise has or had exclusive marketing rights for the heater in North America.

Comfort Living was formed in 2008 "for the express purpose of marketing and selling infrared portable space heaters manufactured by Well." Dkt. 13 (Defendant's response). Michael Munsterman and Ronald Bunse are Comfort Living's principals.

**A.     COMFORT LIVING AND EARTHWISE CONTRACTS**

In early 2008, Comfort Living maintains that it learned of an opportunity to market and distribute the heater through a distribution agreement with Mr. Searle. At some point in early 2008, Comfort Living's principals traveled to Yelm to tour the Earthwise warehouse. According to Comfort Living, during this visit, Mr. Searle represented that Earthwise enjoyed exclusive marketing rights for the heater manufactured by Well in North America, and that he and/or Earthwise owned patent rights to the heater.

ORDER – 2

On June 28, 2008, Comfort Living and Earthwise Electronics[1] entered into two contracts: (1) a distribution agreement appointing Comfort Living as Earthwise Electronic's distributor of the heaters in the midwest ("June 28 distribution agreement") (Dkt. 14-2), and (2) a reciprocal non-disclosure and non-circumvention agreement ("non-circumvention agreement") (Dkt. 14-3). Comfort Living maintains that it entered into these contracts in reliance on Mr. Searle's representations that Earthwise had marketing rights for the heater and that it owned patent rights for the heater.

According to the June 28 distribution agreement, Comfort Living would be the exclusive dealer for the heater in the Midwestern United States. Dkt. 14-2 at 3 (Section 2). This distribution agreement also contained the following clauses: (1) Earthwise was prohibited from distributing the heater in Comfort Living's territory (Section 2); and (2) Comfort Living was required to purchase its requirements for the heater from Earthwise (Section 12(a)). Dkt. 14-2.

The June 28 non-circumvention agreement applied to the "Marketing of: Patented Heating & Air Filtration Products and Technologies." Dkt. 14-3 (Exhibit B). This agreement contained the following provision:

> The undersigned . . . [both] agree that his or her corporations, divisions, subsidiaries, employees, agents or consultants will not make any contact with, deal with, or otherwise involve themselves in any transaction with any consultant, attorney . . .[or] corporations or individuals . . . introduced by one party to the other, without written permission of the other party for a period of 3 years from the date upon which this agreement is entered into . . . .

---

[1] According to Plaintiffs' motion for preliminary injunction, as well as the distribution agreement Plaintiffs initially filed, the June 28, 2008 distribution agreement was entered into by Earthwise Technologies (rather than Earthwise Electronics) and Comfort Living. *See* Dkt. 6, 4-12 (Exhibit A). At the preliminary injunction hearing held on July 30, 2009, the parties agreed that the June 28 distribution agreement was instead between Earthwise Electronics and Comfort Living. Because the parties apparently agree that the June 28 distribution agreement submitted by Plaintiffs is not accurate (Dkt. 6, 5-13), the Court has considered only the distribution agreement submitted by Comfort Living (Dkt. 14-2). The parties have submitted the same version of the non-circumvention agreement, signed by Earthwise Electronics and Comfort Living. *See* Dkt. 6, 14-15 (Plaintiffs' submission) *and* Dkt. 14-3 (Defendant's submission).

ORDER – 3

*Id.* at 3 (Paragraph 8).

The non-circumvention agreement also prohibited either party from divulging confidential information of the other party. *Id.* (Section 5). Comfort Living claims that the June 28 contracts also required Earthwise to pay Comfort Living a 3% commission on all North American sales of the heater, excluding internet sales, once Comfort Living developed and implemented a national marketing and sales training program. However, Comfort Living has not directed the Court to any contract provision that provides for a 3% commission.

After executing the June 28 contracts, Comfort Living sold more than 50,000 heaters during the 2008 season.

Comfort Living claims that sometime in 2008, Earthwise Electronics breached the June 28 contracts. First, Comfort Living claims that Earthwise Electronics entered into dealership arrangements with third parties for the sale of the heater within Comfort Living's territory, in violation of the distribution agreement.[2] Second, Comfort Living contends that Earthwise Electronics failed to pay the 3% commission fee. Comfort Living contends that it then informed Mr. Searle of these breaches.

On October 17, 2008, Comfort Living's principals again traveled to Yelm to meet with Mr. Searle and "discuss the marketing, distribution chain, and exclusive territory rights for the sale of the Well's heater." Dkt. 13 at 6. Comfort Living maintains that during this meeting, the June 28 contracts were terminated, and that all business dealings and contractual relationships between Comfort Living and Earthwise Electronics were terminated. Earthwise maintains that the June 28 contracts were not terminated. In any event, Comfort Living entered into a new distribution agreement, although this agreement was signed by Comfort Living and Earthwise Technologies, and not Earthwise Electronics ("October 17 distribution agreement"). Dkt. 14-4 (Exhibit C). Comfort Living and Earthwise

---

[2] Comfort Living did not provide evidence of this activity, other than statements made in Comfort Living's principal's declarations.

ORDER – 4

Technologies did not execute a non-circumvention agreement. Comfort Living maintains that it did not sign a non-circumvention agreement with Earthwise Technologies because Comfort Living "wanted to ensure it could pursue another supplier of the Well's heater in the event that Mr. Searle again refused to honor the parties' contract." Dkt. 15 at 7 (Declaration of Ronald Bunse). Plaintiffs counter that the non-circumvention agreement between Comfort Living and Earthwise Electronics remained in effect, and that Earthwise Technologies remains a "beneficiary" to that agreement. Mr. Searle maintains that the parties renegotiated the distribution agreement in order to "better define the geographical marketing territory assigned to Comfort Living," but that Earthwise never agreed to terminate the non-circumvention agreement. Dkt. 20 at 2.

The October 17 distribution agreement and the June 28 distribution agreement closely resemble one another, but there are several differences. As stated above, the October 17 distribution agreement was signed by Earthwise Technologies rather than Earthwise Electronics. *Id*. at 2. The October 17 distribution agreement also contained preamble language that was absent from the June 28 agreement, stating that Earthwise "has exclusive marketing rights" for the "Products" in North America. *Id*.

Like the June 28 distribution agreement, the October 17 distribution agreement defined "Products" discussed throughout the agreement as those described in "Schedule A" attached to the agreement. The parties did not direct the Court to a copy of Schedule A in the record.[3] However, Comfort Living maintains that this schedule describes the heater manufactured by Well. Earthwise does not appear to dispute this assertion.

**B.    COMFORT LIVING, WELL, AND EARTHWISE FINANCIAL ARRANGEMENT**

Comfort Living maintains that in April 2008, before the parties entered into the June or October contracts, Mr. Searle and Comfort Living's principals traveled to Taiwan to meet

---

[3] Exhibit C to the distribution agreement identifies the product names as "ComfortZone Infrared Heater," "ComfortZone Heater," "SterilAir5" and "BioSmart." Dkt. 14-4 at 10.

ORDER – 5

with Well representatives. An email dated April 20, 2008, from Mr. Searle to Mr. Bunse, filed by Comfort Living, discusses the proposed financial arrangement in general terms. Dkt. 15-5 (Exhibit D). This email also discusses travel arrangements for Comfort Living's trip to Taiwan to meet with Well representatives. *Id*.

Comfort Living maintains that a financing arrangement was ultimately reached between Comfort Living, Earthwise, and Well, under which Well provided a line of credit to Comfort Living, allowing heaters to be ordered, manufactured, and shipped to Comfort Living before payment was due.[4] To meet payment obligations, Comfort Living opened a bank account in Taiwan. Comfort Living wired funds from its American bank to the Taiwan bank to make payment for heaters and to make payment to Earthwise Technologies for its commissions. Irene Chen, a Well employee, was designated as Comfort Living's agent and was authorized to make withdrawals from the Taiwanese bank for payment to Well. Well, in turn, would then make payment to Earthwise Technologies to fulfill Well's obligations to Earthwise.

According to Comfort Living, Well contacted Comfort Living in January 2009 and stated that Earthwise Technologies owed Well substantial sums of money, and that Earthwise Technologies reported to Well that the reason for its payment delinquency was that Comfort Living was delinquent in payments to Earthwise Technologies. Comfort Living denies having missed payments to Earthwise. According to Thomas Ku, business manager of Well, Earthwise was manipulating payments by collecting for the sale of heaters Well manufactured without paying Well for the heaters. Dkt. 18 at 2 (Declaration of Thomas Ku). Mr. Ku contends that Ms. Chen was working with Earthwise to "deceive" Well. *Id*. According to Mr. Ku, by the end of February 2009, Earthwise owed Well over $6 million.

---

[4] The parties did not file a copy of any written financial agreement, nor did the parties file a copy of the Earthwise-Well contract.

ORDER – 6

*Id*. Earthwise later sued Well in Thurston County Superior Court, and Well countersued for $6 million.

## C. COMFORT LIVING – WELL COMMUNICATIONS AND MERGER

Earthwise alleges that Comfort Living began to communicate with Well sometime prior to January 23, 2009, without authorization from Earthwise, and in violation of the June 2008 non-circumvention agreement. Comfort Living acknowledges that at least some of the alleged communication occurred, but maintains that no contract breach occurred because the June 2008 non-circumvention agreement had been terminated.

### 1. Earthwise's allegations regarding communications between Comfort Living and Well

Earthwise maintains that Comfort Living and Well developed a plan to eliminate Earthwise as the middleman. According to this plan, Comfort Living first refused to pay Earthwise's invoices for heaters, forcing Earthwise to store heaters shipped from Well in Earthwise's inventory. Comfort Living then allegedly recruited other distributors to also refuse to honor contractual commitments to Earthwise. Dkt. 5 at 6 (citing Dkt. 6 (Exhibit G)). Finally, Comfort Living began to buy the heaters directly from Well.

Earthwise filed copies of several email communications between Comfort Living and Well, in support of its argument that Comfort Living knowingly breached the June 28 non-circumvention agreement by surreptitiously working with Well to drive Earthwise out of the market for the heater. For example, Earthwise filed an email dated January 23, 2009, from Thomas Ku of Well to Mr. Munsterman, replying to an email sent from Mr. Munsterman. Dkt. 6 at 30 (Exhibit D). This email discusses an upcoming trip, where Mr. Munsterman was to travel to Vietnam to meet with Mr. Ku. *Id.* According to meeting minutes, Comfort Living and Well met on February 10, 2009, and discussed several topics, including patent issues, as well as a possible merger between Comfort Living and Well. Dkt. 6, 32-34 (Exhibit E).

Earthwise also maintains that emails demonstrate that Comfort Living divulged confidential information to Well, and attempted to obfuscate dealings between Comfort

ORDER – 7

Living and Well in an effort to avoid a direct breach of the non-circumvention agreement and distribution agreement. According to emails provided by Earthwise, Well contacted Comfort Living on March 20, 2009, informing Comfort Living that Well had decided to invest $1.4 million to acquire a 20% stake in Comfort Living. Dkt. 6 at 50 (Exhibit K). Ultimately, it appears that Well purchased 10% of Comfort Living. *See id.* at 55 (Exhibit M). Well shipped its first heaters to Comfort Living on May 27, 2009. *Id.* at 61 (Exhibit O). According to a May 22, 2009, email, Well stated that it wished to deal with New Yield Corporation to "deal with" Comfort Living. *Id.* at 64 (Exhibit P). This email also stated that "Comfort Living has a lawsuit with Bruce [Searle] that we don't deal directly is much better [sic]." *Id.* In an earlier email, sent April 29, 2009, Mr. Bunse of Comfort Living wrote Well and stated "[w]e won't actually take title to [the heaters manufactured by Well] until they are sold, so Bruce [Searle] would have no claim to them." *Id.* at 52 (Exhibit L). In addition, according to an April 1, 2009, email, Comfort Living stated that it "has proven that [it is] willing to work with Well and do whatever it takes to earn their long term trust including giving Well inside information in an attempt to help [Well] recover their losses from [Earthwise Technologies]." Dkt. 6 at 46 (Exhibit I).

Finally, Earthwise maintains that Comfort Living divulged confidential information to Well, including information about Earthwise's inventory levels.

    **2.    Comfort Living's version of events regarding its communications with Well**

Comfort Living and Well maintain that after discovering the problems with Earthwise's and Well's financial arrangement, Comfort Living's principals met with Well's management in Vietnam. During this meeting, Comfort Living maintains that it learned that neither Earthwise entity enjoys an exclusive North American distribution agreement with Well and that neither Mr. Searle nor his companies had patent rights to Well's heater. Well also informed Comfort Living that Earthwise owed Well more than $6 million.

ORDER – 8

At some point in early 2009, Well terminated its business relationship with Mr. Searle and Earthwise based on Well's investigation of the payment issues. On April 2, 2009, Earthwise Technologies sent a letter to Comfort Living and other distributors, informing them that Well and Earthwise Technologies were no longer doing business together and that Earthwise Technologies had arranged for a new heater supplier for the 2009 season. *See* Dkt. 14-5 (Exhibit D). On April 10, 2009, Comfort Living sent Earthwise Technologies a letter requesting assurances that Earthwise Technologies would be able to perform under the parties' distribution agreement, and in particular, whether Earthwise would be able to provide the Well heater. Dkt. 14-6 (Exhibit E). Comfort Living maintains that it received no response from Earthwise. Shortly after sending the April 10 letter, Comfort Living contacted Earthwise and informed it that Comfort Living would no longer be doing business with Earthwise Technologies.

According to Comfort Living, after terminating its relationship with Earthwise, Comfort Living was approached by Well, and extended an offer for Comfort Living to serve as a distributor for Well's heater, and Comfort Living accepted.

## II. PROCEDURAL BACKGROUND

On April 15, 2009, Earthwise filed a complaint in Thurston County Superior Court. Dkt. 1. On May 5, 2009, the case was removed to this Court. *Id*.

On July 2, 2009, Earthwise filed a motion for preliminary injunction. Dkt. 5. Earthwise seeks to enjoin Comfort Living from communicating with, purchasing heaters from, or otherwise transacting business with Well. Earthwise also maintains that Washington's Uniform Trade Secrets Act ("UTSA") allows the Court to issue an injunction against Comfort Living prohibiting further disclosure of confidential information. Dkt. 5, 13-14. On July 20, 2009, Comfort Living filed a response. Dkt. 13. On July 23, 2009, Earthwise filed a reply. Dkt. 19. On July 30, 2009, the Court held a hearing.

ORDER – 9

## III. DISCUSSION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, __ U.S. __, 129 S. Ct. 365, 376 (2008) (citation omitted). In order to succeed on a motion for a preliminary injunction, a party must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 374.

The Court denies Plaintiffs' motion as to communications and transactions between Comfort Living and Well because Plaintiffs have not demonstrated that they are likely to suffer irreparable harm in the absence of preliminary relief. The Court grants Plaintiffs' motion to prohibit Comfort Living from disseminating confidential information pursuant to the UTSA.

### A. BUSINESS TRANSACTIONS AND COMMUNICATIONS WITH WELL

#### 1. Irreparable Harm

A plaintiff requesting a preliminary injunction must demonstrate that irreparable harm is likely to occur before a decision on the merits can be rendered. *See id.* at 375 (rejecting appellate court's "possibility" of irreparable harm standard as too lenient); *see also Caribbean Marine Services Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (plaintiff must demonstrate "immediate threatened harm"). There must be evidence of actual injury to support claims of irreparable injury; speculative losses are insufficient. *See Goldie's Bookstore, Inc. v. Sup. Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984).

A court will generally deny injunctive relief where a plaintiff has an alternative legal remedy available. *See Weaver v. Florida Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999). However, monetary damages may not provide adequate remedy where a plaintiff demonstrates substantial loss of business or termination of its business. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975).

ORDER – 10

Before granting or denying a motion for preliminary injunction, a court should consider the prejudice to the non-moving party. *See Winter*, 129 S. Ct. at 376. A court should also consider possible prejudice to third parties. *Publications Intern., Ltd. v. Meredith Corp.*, 88 F.3d 473, 478 (7th Cir. 1996).

Earthwise contends that it will suffer irreparable harm if its motion for preliminary relief is not granted. According to Mr. Searle, if Comfort Living is not enjoined from ordering heaters directly from Well, Earthwise will likely go out of business. Dkt. 7 at 2 (Declaration of Bruce Searle). Mr. Searle maintains that Earthwise "has pending orders that it cannot fulfill because now the heaters are in Comfort Living's hands, thus forcing Earthwise customers to purchase directly from Well. Unless Well and Comfort Living are prevented from flooding the market with the Well heater, Earthwise will have lost its lines of distribution, without which it cannot continue its business." *Id*. In another declaration, Mr. Searle states, "if Comfort Living is allowed to continue to transact business with Well in violation of our Non-Circumvention Agreement, they will collectively be able to eliminate [Earthwise] from the distribution chain, steal a large portion of our market and likely force us out of business." Dkt. 20 at 3.

According to Jim Wood, president of Earthwise Technologies, Earthwise's distributor network currently comprises more than 90% of its sales. Dkt. 8 (Declaration of Jim Wood). At the preliminary injunction hearing, Earthwise stated that of this 90%, Comfort Living accounts for about one-third of distribution sales. After executing the June and October 2008 agreements, Mr. Wood maintains that Comfort Living became one of Earthwise's largest distributors, purchasing more than 60,000 heaters. Dkt. 8 at 2. Earthwise also claims that Comfort Living is trying to recruit other distributors to cease conducting business with Earthwise. Comfort Living counters that at least one other distributor, Zollinger Commercial Warehousing, terminated its distribution agreement with Earthwise based on allegations that Earthwise was selling the heaters within Zollinger's "protected territory," in violation of their agreement. Dkt. 17 at 2 (Declaration of Bruce Amberson). In addition, at the

ORDER – 11

preliminary injunction hearing, Comfort Living's counsel stated that Comfort Living sold roughly 20% of Earthwise's heaters last year, or about 50,000 heaters out of 220,000 heaters ordered by Earthwise.

Comfort Living further maintains that there is no risk of irreparable harm because Plaintiffs may seek monetary damages. Comfort Living argues that Plaintiffs are not at risk of irreparable harm because (1) Earthwise has more than 43,000 heaters in inventory, and thus is not at risk for being unable to fulfill customer orders, (2) nothing has changed since this action was filed that warrants preliminary injunctive relief, (3) the relief sought would prejudice Comfort Living by "improperly stifling market competition," (4) Earthwise informed distributors that it was ceasing business with Well and already has a new manufacturer. Dkt. 13 at 17.

Based on the record developed thus far, the Court cannot conclude that Earthwise will suffer irreparable harm absent a preliminary injunction order. Earthwise's claims that it will be driven out of business are largely based on conclusory statements. First, it is not clear that the loss of Comfort Living's sales during the period in which this matter is pending before the Court will likely drive Earthwise out of business or cause it irreparable harm in lost profits. The parties appear to agree that Comfort Living accounts for between 20% and 30% of Earthwise's total sales. Earthwise has not sufficiently demonstrated that it cannot remain in business and avoid significant losses by selling to other distributors, selling in different regions, and by making internet sales. Most importantly, Earthwise has not sufficiently demonstrated that the alleged contract breach cannot be remedied by monetary damages.

Second, while Earthwise has provided emails where Comfort Living discusses other Earthwise distributors, the Court cannot conclude at this stage that Comfort Living coerced other distributors to terminate distribution agreements with Earthwise. In addition, Comfort Living provided a declaration from one major distributor, where the Zollinger representative maintained that it terminated its agreement because of Earthwise's breach. This is a factual dispute that the Court cannot resolve based on the present record.

ORDER – 12

Finally, the Court must consider the possible prejudice to Comfort Living and Well in the event the Court were to improperly enjoin Comfort Living from dealing with Well. In this case, Comfort Living and Well would also face a risk of business loss; Comfort Living has stated that it was formed for the purpose of selling the Well heater, and Well likely needs Comfort Living and other distributors to sell its product. This action involves many disputed facts, and allegations of breaches of contracts between Comfort Living and Earthwise, as well as between Well and Earthwise. The dispute between Well and Earthwise is currently pending before a different forum. The Court finds that it cannot sufficiently address the likelihood of success of Earthwise's claims or Comfort Living's defenses based on the current record. *See Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler*, 305 F. Supp. 1210, 1213 (D.C. Cal. 1969) ("[o]n an application for a preliminary injunction the court is not bound to decide doubtful and difficult questions of law or disputed questions of fact.")

### 2. Likelihood of Success on the Merits

Because the Court denies Plaintiffs' motion based on the irreparable harm factor, it need not fully address Plaintiffs' likelihood of success on the merits. However, the Court notes that, based on the current record, there are many facts in dispute. For example, the parties dispute the existence of a valid non-circumvention agreement and distribution agreement, as Comfort Living appears to maintain that these contracts are voidable based on Earthwise's alleged misrepresentations. There appears to be a dispute as to whether Earthwise represented that it owned patent rights to the heater, and whether Comfort Living relied on this representation, as well as Earthwise's representation that it held exclusive marketing rights to the heater. Assuming Comfort Living did rely on Earthwise's representations, there is conflicting evidence as to whether the statements would have been truthful at the time the June 28 contracts and the October 17 distribution were executed. Additionally, the parties dispute whether the non-circumvention agreement was terminated in October 2008. Finally, also unclear at this time is the effect Well's claims against Earthwise may or may not have on this action. For example, if Earthwise breached its

ORDER – 13

1 agreement with Well, and was unable to acquire Well's heaters because of Well's
2 termination of the contract, it is not clear how this would affect the Earthwise-Comfort
3 Living agreements. In short, the record as currently developed leaves the Court completely
4 uncertain as to which party is likely to prevail.

**B.     TRADE SECRETS AND CONFIDENTIAL INFORMATION**

Irreparable harm is presumed when a defendant engages in acts prohibited by a statute that provides for injunctive relief. *See, e.g., Silver Stage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) (irreparable harm may be presumed when defendant has violated statute) (collecting cases).

The UTSA allows the Court to issue an injunction for "actual or threatened misappropriation" of trade secrets. RCW 19.108.020. A trade secret means "information, including a formula, pattern, compilation, program, device, method, technique, or process that:

> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4).

The Court agrees with Earthwise that it is entitled to a preliminary injunction order prohibiting Comfort Living from disseminating Earthwise's trade secrets. Even if Comfort Living ultimately succeeds on the merits regarding the validity of the parties' agreements, Earthwise likely continues to have rights in its trade secrets. The Court is not making a finding that Comfort Living has violated this statute, but the Court does find that an order prohibiting dissemination of Earthwise's trade secrets is appropriate in light of Comfort Living's relationship with Well.

At the preliminary injunction hearing, Comfort Living did not appear to contest issuance of such an order. Accordingly, Comfort Living is prohibited from disseminating

ORDER – 14

Earthwise's trade secrets, including, but not limited to, information regarding Earthwise's inventory levels.

## IV. ORDER

Therefore, it is hereby **ORDERED** that

Plaintiffs' motion for preliminary injunction (Dkt. 5) is **GRANTED in part** and **DENIED in part**, as follows:

(1) Comfort Living is enjoined from disseminating Earthwise's trade secret information; and

(2) Plaintiffs' motion to enjoin Comfort Living from communicating or transacting business with Well is denied.

DATED this 12th day of August, 2009.

BENJAMIN H. SETTLE
United States District Judge

ORDER – 15